FILED
2006 Nov-15  AM 09:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| **KARLA IRONS, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:06-CV-0563-RDP** |
| | } | |
| **ARGENT MORTGAGE** | } | |
| **CORPORATION, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

## I.     INTRODUCTION

This cases arises out of a home-financing transaction.  The court has before it Defendants Argent Mortgage Company ("Argent"), Ameriquest Mortgage Corporation ("Ameriquest"), and Deutsche Bank National Trust Company's ("Deutsche") Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. #26) filed on July 12, 2006.  Plaintiffs Karla and Jerry Irons ("Plaintiffs") filed their opposition (Doc. #27) on July 20, 2006, and Defendants filed their reply (Doc. #28) on July 24, 2006.  After several series of briefs and amendments, the scope of Plaintiffs' case is now limited to two (2) claims:  count one is for fraud against Defendant Argent and count two is rescission against all Defendants.  (Doc. #24).  The court held a hearing on August 11, 2006 on Defendants' Second Motion to Dismiss and thereafter entered an order on August 14, 2006, directing the parties to submit a joint status report.  Additionally, the court asked the parties to submit briefs on the following three issues: (1) whether the yield spread premium may be properly characterized as an undisclosed mortgage broker fee; (2) the effect of the Rooker-Feldman defense asserted by Defendants; and (3) how the sale of the subject property by way of foreclosure affects Plaintiffs'

rights under the Truth in Lending Act ("TILA").  The parties responded in a timely manner and the

court is prepared to address the merits of Defendants' Motion to Dismiss, beginning with Plaintiffs'

rescission count.

## II.    STATEMENT OF FACTS

Plaintiffs allege that they sought to refinance the existing mortgage on their home in

Albertville, Alabama and, for that purpose, obtained the services of Argent through a loan broker,

Blue Star Mortgage Company of Birmingham, Alabama ("Blue Star").  (Doc. #24 ¶ 10).  The

mortgage loan transaction in this case was closed on or about May 20, 2003.  (Doc. #24 ¶ 8).  At that

closing, Plaintiffs executed a promissory note and mortgage to Defendants covering the real property

that constituted the permanent residence of Plaintiffs.  (Doc. #24 ¶ 8).  Servicing rights to the loan

were immediately sold to Ameriquest.  (Doc. #24 ¶ 8; Doc. #30 Ex. A).  Ameriquest, in its capacity

as servicing agent of Argent, purported to sell the mortgage executed by Plaintiffs together with the

debt secured thereby to Deutsche Bank, as well as the note and all interest that Ameriquest, as

servicing agent, could convey on behalf of Argent.  (Doc. # 24 ¶ 8).

On or about May 20, 2003, an attorney and/or agent acting on behalf of Argent or Ameriquest

came to Plaintiffs' residence and had them execute certain loan documents necessary for the

refinance.  (Doc. #24 ¶ 11).  The documents included, among other things: an HUD-1 settlement

statement, note, mortgage, truth-in lending disclosure statement, and a notice of right to cancel.

(Doc. #24 ¶ 12; Doc. #30 Ex. C–G).  After Plaintiffs executed the documents, they were collected

by this attorney and/or agent and taken from the residence.  (Doc. #24 ¶ 13).  No copies or

documents were left with Plaintiffs.  (Doc. #24 ¶ 13).  Plaintiffs did not receive copies of the

documents until they were delivered by mail sometime between May 28, 2003 and May 31, 2003,

some eight days or more after the closing. (Doc. #24 ¶ 14). In addition, Plaintiffs allege they were never provided with copies of preliminary disclosures by Blue Star, as required by TILA and Real Estate Settlement Procedures Act ("RESPA") (*i.e.*, a good faith estimate and truth-in-lending disclosures), and had no advance notice of any fees being charged by Blue Star to originate the loan. (Doc. # 24 ¶ 14).

On September 20, 2004, Plaintiffs received a letter from an attorney representing Defendant Deutsche Bank declaring the mortgage debt due. (Doc. #24 ¶ 15; Doc. #16 Ex. A). The notice allowed for Plaintiffs to dispute the debt. (Doc. #24 ¶ 15). Although Plaintiffs disputed the validity of the debt, and consistently asserted that position thereafter, the mortgage was foreclosed. (Doc. #24 ¶¶16–17). A foreclosure deed was issued on January 11, 2005 in favor of Defendant Deutsche Bank. (Doc. #24 ¶ 17). Plaintiffs contend they did not have an opportunity to appear and defend before the foreclosure took place. (Doc. #24 ¶ 17). On January 27, 2005, Defendants filed a complaint to recover possession of the residence in the Circuit Court of Marshall County, Alabama. (Doc. #24 ¶ 18). The circuit court filed an order granting Deutsche Bank's motion for summary judgment on November 29, 2005. (Doc. #24 ¶ 18; Doc. #30 Ex. H).[1]

Plaintiffs assert that in October 2005 they initiated an audit review of the refinance transaction with Defendant Argent. (Doc. #24 ¶ 19). Plaintiffs claim that at that time they discovered certain TILA and Mini-Code violations had occurred, hidden fees were charged, and their right to cancel had been "abridged." (Doc. #24 ¶ 19). Additionally, Plaintiffs claim the dates on the notice to cancel had been altered. (Doc. #24 ¶ 19). On December 1, 2005, Plaintiffs sent a letter of

---

[1]Defendants Argent and Ameriquest were not parties to the state court proceedings. (Doc. #24 ¶ 18; Doc. #30 Ex. H).

rescission addressed to Defendants Argent and Ameriquest.  (Doc. #24 ¶ 20; Doc. #30 Ex. I).

Defendants never responded to that letter. (Doc. #24 ¶ 20).  Afterwards, Plaintiffs received notice

that the Marshall County Circuit Court had issued a Writ of Possession.  Consequently, Plaintiffs

were evicted from their residence on January 23, 2006, the day they filed this action.  (Doc. #24 ¶

21).

## III.    PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that Defendants violated the Truth-in-Lending Act, 15 U.S.C. 1601 *et seq.*,

and 12 C.F.R. § 226.1 (Regulation Z) by not giving them preliminary TILA and RESPA disclosures

within the time prescribed by law. (Doc. #24 ¶ 31).  Particularly, Plaintiffs complain there were no

disclosures of the "Yield Spread Premium" ("YSP") and that the "Notice of Right to Cancel or

Rescind" was not timely.  (Doc. #24 ¶ 31).  Thus, Plaintiffs claim that Defendant Argent, in a

contractual relationship with Ameriquest and Deutsche, concealed the true cost of credit to Plaintiffs,

deprived them of the right to cancel within the time contemplated by law after closing on the loan,

and defeated the purpose of TILA, thereby damaging them.  Plaintiffs allege these actions of

Defendants provide a basis for rescission under 15 U.S.C. § 1635(b).

Additionally, Plaintiffs allege that they were charged a YSP at the time of the loan closing,

and further claim that no TILA disclosure of such YSP was made as prescribed by law.  (Doc. #24

¶ 23).  In support of their fraud claim, Plaintiffs insist they did not discover, nor should they

reasonably have discovered, this non-disclosure of the YSP until they received the result of the audit

review, and that the YSP caused them to be charged a higher interest rate.  (Doc. #24 ¶ 23).

Plaintiffs allege that (1) by concealing and misrepresenting the YSP, Defendant Argent defrauded

them in connection with the consumer lending transaction, and (2) had they known this information

4

at the time, Plaintiffs would not have sustained their damages and would not have entered into the transaction.  (Doc. #24 ¶ 27).

## IV.    STANDARD OF REVIEW

### A.    Rescission Claim

Defendants have challenged the sufficiency of Plaintiffs' rescission claim under Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal of a complaint for failure to state a claim upon which relief may be granted.  The standard the court must apply is a familiar one: a court may dismiss a complaint under Rule 12(b)(6) only if it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party."  *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)).  "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."  *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).  Further, "[a] complaint may not be dismissed because the Plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory."  *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original) (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)).  In this circuit, "[t]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is . . . 'exceedingly

low.'" *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (quoting *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev.*, 711 F.2d 989, 995 (11th Cir. 1983)).

### B.      Fraud Claim

Defendants have also challenged the sufficiency of Plaintiffs' fraud claim included in the Second Amended Complaint under Federal Rule of Civil Procedure 9(b), which provides for dismissal of a complaint for failure to state the circumstances of fraud with particularity.  In order to satisfy the pleading requirements of Rule 9(b), "[t]he Plaintiff's complaint must allege the details of the Defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *Cooper v. Blue Cross Blue Shield of Fla.*, Inc., 19 F.3d 562, 568 (11th Cir. 1994).  As the Eleventh Circuit has stated:

> Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

The Eleventh Circuit has noted that "Rule 9(b) must not be read to abrogate Rule 8, however, and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of Rule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985).  Indeed, in *Friedlander*, the court noted that dismissal for failure to plead fraud with particularity is a "severe sanction."  *Id.*

6

V.      **ANALYSIS**

A.      **Rescission Claim**

Defendants have challenged the validity of Plaintiffs' rescission claim on several alternative grounds, including *res judicata*, collateral estoppel, and statute of limitations.  Because the court concludes that Plaintiffs' Truth in Lending Act ("TILA") claim, 15 U.S.C. §1601, *et seq.*, is barred under the plain language of 12 C.F.R. § 226.23 and no basis for applying equitable tolling exists under the circumstances of this case, Defendants' motion to dismiss is due to be granted on that particular basis and the court need not address the other defenses asserted.

Critical to the court's analysis on the validity and untimeliness of Plaintiffs' TILA claim are the following subparts of 12 C.F.R. § 226.23, which are regulations pertaining to TILA:

(a) Consumer's right to rescind.

(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last.  If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

7

(b)(1) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(i) The retention or acquisition of a security interest in the consumer's principal dwelling.
(ii) The consumer's right to rescind the transaction.
(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
(iv) The effects of rescission, as described in paragraph (d) of this section.
(v) The date the rescission period expires.

(2) Proper form of notice. To satisfy the disclosure requirements of paragraph (b)(1) of this section, the creditor shall provide the appropriate model form in Appendix H of this part or a substantially similar notice. . . .

(h) Special rules for foreclosures--

(1) Right to rescind. After the initiation of foreclosure on the consumer's principal dwelling that secures the credit obligation, the consumer shall have the right to rescind the transaction if:

(i) A mortgage broker fee that should have been included in the finance charge was not included; or
(ii) The creditor did not provide the properly completed appropriate model form in Appendix H of this part, or a substantially similar notice of rescission.

(2) Tolerance for disclosures. After the initiation of foreclosure on the consumer's principal dwelling that secures the credit obligation, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge:

(i) is understated by no more than $35; or
(ii) is greater than the amount required to be disclosed.

12 C.F.R. § 226.23 (footnotes omitted).

In this case, it is undisputed from the pleadings that a foreclosure has occurred.  Therefore, § 226.23(h) controls the scope of Plaintiffs' right to rescind.  By its plain language, subpart (h) limits the circumstances under which a rescission may occur after a foreclosure upon the mortgaged property.  The two permissible post-foreclosure grounds for rescission are:  (i)  the failure to include a mortgage broker fee in the finance charge that should have been disclosed; and (ii) the failure to provide the borrower with an adequate notice of rescission.  12 C.F.R. § 226.23(h)(1).

As an initial matter, Plaintiffs' TILA claim fails under subpart (h)(1)(i) because their Second Amended Complaint does not include any allegations relating to an undisclosed mortgage broker fee; instead, Plaintiffs assert that Defendants failed to promptly provide them with material disclosures, and, in any event, even if these disclosures were made, they lacked clarity and/or were inadequate to disclose the yield spread premium charged to Plaintiffs.[2]

With respect to the notice of rescission, while Plaintiffs do complain that they did not receive a copy of the notice until several days after the closing on their financing, they do not have any objection to the form of the notice.  As such, while they take issue with the timeliness of the notice,[3]

---

[2]In fact, when asked to brief this specific issue by the court in its August 14, 2006 order (Doc. #31), Plaintiffs admit that they "do not contend that the amount of the yield spread premium should have been included as a prepaid finance charge."  (Doc. #33 at 13 n. 7).  Thus, Plaintiffs are not seeking rescission under § 226.23(h)(1)(i) and all parties agree that the issues governing Plaintiffs' rescission claim are controlled by § 226.23(h)(1)(ii).  (Doc. #33 at 13 n. 7; Doc. #34 at 3).

[3]Plaintiffs' argument—that the late delivery of the notice to cancel (that is otherwise in compliance with TILA) renders it ineffective to trigger the running of the three (3)-day period—flies in the face of § 226.23(a)(3)'s plain language.  That subsection expressly provides that the running of a three (3)-day right to cancel will start upon the receipt of the notice if such notice is received after the closing.  Therefore, the regulations fully recognize that a borrower (similar to Plaintiffs) might not immediately receive a copy of the notice on the day of consummation and, therefore, under those circumstances, delaying the time in which the three (3)-day period begins to run is appropriate.

Plaintiffs do not dispute the adequacy of its structure.[4]

In *Smith v. Highland Bank*, 108 F.3d 1325 (11th Cir. 1997), the Eleventh Circuit was faced with allegations by the mortgagees that the defendants had violated TILA in handling their mortgages. There, just as in this case, the mortgagees received a notice of the right to cancel. In rejecting a "creative" argument by the plaintiff that the notice failed to give her "a meaningful opportunity to rescind" and explaining the importance of evaluating the adequacy of a notice to cancel in the context of the entire transaction, the court stated: "[J]udging a lender's compliance with the notice provision is not mechanical; rather a court 'must scrutinize the circumstances of the transaction.'" *Id.* at 1327 (citation omitted). Therefore, similar to the *Smith* case, this court concludes that the notice to cancel provided to Plaintiffs after the closing was sufficient to give them a meaningful opportunity to rescind, which is all that § 226.23(h)(ii) requires.[5]

Alternatively, Plaintiffs' rescission claim is time-barred under § 226.23(a)(3). Under § 226.23(a)(3), a borrower has the absolute right to rescind three (3) business days from the latter of: (i) consummation, (ii) delivery of the notice required by paragraph (b) of this section (the right to rescind notice), or (iii) delivery of all material disclosures. In Plaintiffs' case, the latter of these actions includes the delivery of the rescission notice and all material disclosures, which, according

---

[4]More specifically, Plaintiffs do not contend that the "Notice of Right to Cancel" which they signed on May 20, 2003, does not conform to the model in Appendix H as required by TILA. *See also* Doc. #27 at 6 ("Plaintiffs admit that they were provided with a completed notice of right to cancel but it contained false and misleading information concerning their rights. Defendants could have easily avoided this problem by giving plaintiffs a complete copy package of loan documents at closing.").

[5]Plaintiffs also take issue with the adequacy of the other material disclosures. (*See, e.g.*, Doc. #18 at 9–10.) However, this is not a permissible basis for asserting a TILA rescission claim after foreclosure. Accordingly, Plaintiffs' rescission claim based on those allegations against Defendants is barred by the express terms of § 226.23(h).

to Plaintiffs' own pleadings, occurred "sometime between 5-28-03 and 5-31-03" (Doc. #24 ¶ 14), and which was after the consummation of the real estate transaction on May 20, 2003. Therefore, Plaintiffs had from approximately June 2, 2003 until June 4, 2003 (depending upon what date they actually received the notice) to exercise their three-day right to rescind the contract under the first part of § 226.23(a)(3). Even based upon their own pleadings in this case, there is no doubt they failed to do so. Instead, their letter of rescission was not sent to Defendants Argent and Ameriquest until December 6, 2005. (Doc. #24 ¶ 20).

In certain limited circumstances, a borrower may have up to three (3) years to rescind the financing agreement. These two situations are: (i) nondelivery of the required rescission notice or (ii) nondelivery of the material disclosures. 12 C.F.R. § 226.23(a)(3). Neither one of these situations applies to Plaintiffs because, although somewhat delayed, they actually received both copies of the rescission notice and the material disclosures. *Cf. Sosa v. Fite*, 498 F.2d 114, 118 (5th Cir. 1974) ("Notwithstanding this display of patience with the ill-advised transaction, Sosa was at liberty to rescind the contract at her pleasure so long as the requisite disclosures of credit terms were not forthcoming.") (footnote and citations omitted). Therefore, the three (3) year statute of limitations does not apply to Plaintiffs, and the only available option to them was the three (3)-day right to rescind as discussed above. While the court recognizes that equitable tolling may operate to relieve

11

a party from a statute of limitations bar under TILA,[6] the circumstances of this case, and a balancing of the equities in it, do not convince the court that a tolling of roughly two and one-half years is appropriate.[7]

### B.      Fraud Claim

Because Argent was not a party to the state court eviction action, the court is not persuaded that the defenses of *res judicata* or collateral estoppel apply.  However, when the above Rule 9 principles are considered, the court believes it is appropriate to require Plaintiffs to amend the complaint to state with more specificity the allegations of any fraud they allege occurred in this case. Accordingly, Defendants' Motion to Dismiss is due to be denied with respect to the fraud claim

---

[6]*See Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 708 (11th Cir. 1998) (agreeing with Third, Sixth, and Ninth Circuits that statute of limitations in TILA is subject to equitable tolling).

[7]The court also asked the parties to brief the applicability of the *Rooker-Feldman* doctrine to the case, as Defendants had sought to use it as a defense.  Since the court finds the plain language of the statute does not allow Plaintiffs' rescission claims, it need not decide whether or not this doctrine applies in the present case.  However, the court notes that this is exactly the type of case for which the Rooker-Feldman doctrine was developed.

As the Supreme Court has recently held: "The Rooker-Feldman doctrine . . . is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  It appears that this is precisely the case here—Plaintiffs, after having lost in state court, are attempting to undo the state court judgment evicting them from their residence.  Although Plaintiffs dispute this is the type of relief they are seeking and whether the claims now before the court were fully considered by the state court, this court cannot help but notice that Plaintiffs' request that the court "vacate the foreclosure deed and direct Defendants to Quitclaim all right, title and interest in the subject property to the Plaintiffs" looks eerily like a complete annulment of the state court's judgment, which is precisely what the doctrine forbids.

asserted against Defendant Argent, but the court will order Plaintiffs to provide a more definite statement of their fraud count. *See* FED. R. CIV. P. 9(b).

## VI. CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss is due to be granted in part and denied in part. Accordingly, the court will enter an order dismissing Plaintiffs' rescission count, dismissing Defendants Ameriquest and Deutsche from the lawsuit, denying Defendants' Motion to Dismiss as to Plaintiffs' fraud claim against Defendant Argent, and directing Plaintiffs to replead their fraud claim with greater specificity. Therefore, as a result of the court's rulings, and after appropriate repleading, the only claim that will remain pending in the case is Plaintiffs' fraud claim against Defendant Argent.[8]

**DONE** and **ORDERED** this _____15th_____ day of November, 2006.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[8]The court notes that the portion of Defendants' motion to dismiss directed at Plaintiffs' fraud claim presents matters outside the pleadings that, to date, have not been excluded by the court. Therefore, pursuant to Rule 12(b)(6) and Rule 12(c), the appropriate course would be for the court to treat the motion as one for summary judgment under Rule 56. The court declines to so convert the motion at this time, since it will require Plaintiffs to replead their fraud allegations. *See* FED. R. CIV. P. 9(b). In the future, all summary judgment submissions in this court should conform to "Appendix II," attached hereto and made a part of this order as if fully set out herein.

# APPENDIX II
## SUMMARY JUDGMENT REQUIREMENTS

---

**NOTICE**

This exhibit contains specific, mandatory instructions regarding the preparation and submission of briefs and evidentiary materials in support of and in opposition to potentially dispositive motions. **These instructions *must* be followed explicitly.  Except for good cause shown, briefs and evidentiary materials that do not conform to the following requirements may be stricken**.

---

### SUBMISSION DATES

The parties to the above-styled action have been or will be given a deadline for the filing of dispositive motions.  Any motion for summary judgment and supporting brief and evidentiary materials will be due on or before that deadline.  The responsive submission of the party opposing the motion for summary judgment shall be filed no later than twenty-one (21) days after the motion for summary judgment is filed.  The movant's reply submission shall be filed no later than eleven (11) days after the date on which the opponent's responsive submission was due.

To ensure that each party is afforded a full and fair opportunity to be heard, the parties *must* cause copies of briefs and evidentiary materials to be delivered to opposing parties without undue delay and, generally, on the same date such materials are submitted to the court.

### SUBMISSIONS

The parties' submissions in support of and in opposition to summary judgment motions must consist of:  (1) a brief containing, in separately identified sections, (i) a statement of allegedly undisputed relevant material facts and (ii) a discussion of relevant legal authorities; and (2) copies of any evidentiary materials upon which the party relies.  More detailed requirements for these submissions are explained in the following sections.

Page 1 of 6

## REQUIREMENTS FOR BRIEFS

**A.     Format**

Initial and response briefs are limited to thirty (30) pages.  Reply briefs are limited to ten (10) pages.  Briefs that exceed twenty (20) pages must include a table of contents that accurately reflects the organization of the document.  The table of contents is not included in the page limit. The text of briefs must be double spaced (except for quotations exceeding fifty (50) words, which may be block indented from the left and right margins and single spaced) using 14-point typeface, preferably Times New Roman.

**B.     Number Submitted**

The parties must **electronically file** their brief through the court's CM/ECF system.  The parties must simultaneously **submit** to the Clerk's Office, for delivery to the court's chambers by the Clerk, an exact copy of the brief, clearly identified as a "courtesy copy."  The parties shall also email to the court's chambers such brief in WordPerfect format.

**C.     Binding**

The court's "courtesy copy" of the brief *must be securely bound* (*e.g.* by three-ring binder or large clip) for ease of use *and* to prevent inadvertent loss of pages.  In addition, all pages submitted in the court's "courtesy copy" shall be three-hole punched.

**D.     Manner of Stating Facts**

All briefs submitted either in support of or in opposition to a motion must begin with a statement of allegedly undisputed relevant material facts set out in *separately numbered paragraphs*. Counsel must state facts in clear, unambiguous, simple, declarative sentences.  All statements of fact must be supported by specific reference to evidentiary submissions.

## 1.     Moving Party's Initial Statement of Facts

The moving party shall list in *separately numbered paragraphs* each material fact the movant contends is true and not in genuine dispute, and upon which the moving party relies to demonstrate that it is entitled to summary judgment.  Each such statement must be followed by a specific reference to those portions of the evidentiary record that the movant claims supports it.[9]

## 2.     Opposing Party's Statement of Facts

Each party opposing a summary judgment motion also must submit a statement of facts divided as follows.

### a.     Response to Movant's Statement

The first section must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts.   The non-moving party's response to the moving party's claimed undisputed facts shall be in *separately numbered paragraphs* that coincide with those of the moving party's claimed undisputed facts.  Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based.  *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*

### b.     Additional Undisputed Facts

The second section may contain additional, allegedly undisputed facts set out in *separately numbered paragraphs* that the opposing party contends require the denial of summary judgment.

---

[9]Each statement of fact should be supported by its own evidentiary citation, regardless of the fact that more than one statement of fact allegedly is supported by the same specific reference to the evidentiary record or more than one statement of fact is contained in the same numbered paragraph.

The second section of the opposing party's statement of facts, if any, shall be clearly designated as such.[10]  The opposing party should include only facts which the opposing party contends are true and not in genuine dispute.

### c.   Additional Disputed Facts

The third section may contain additional, allegedly disputed  facts set out in *separately numbered paragraphs* that the opposing  party contends  require the denial of summary judgment. The third section of the opposing party's statement of facts, if any, shall be clearly designated as such.  Each statement of allegedly disputed facts must be followed by specific reference to those portions of the evidentiary record which both support and contradict the alleged fact.[11]

### 3.   Moving Party's Reply

The reply submission, if any, shall consist of only the moving party's disputes, if any, with the non-moving party's additional claimed undisputed facts.  The moving party's response to the non-moving party's additional claimed undisputed facts shall be in *separately numbered paragraphs* that coincide with those of the non-moving party's additional claimed undisputed facts. Any statements of fact that are disputed by the moving party must be followed by a specific reference to those portions of the evidentiary record upon which the disputation is based.  *All additional material facts set forth in the statement required of the opposing parties will be deemed to be admitted for*

---

[10]Each statement of fact should be supported by its own evidentiary citation, regardless of the fact that more than one statement of fact allegedly is supported by the same specific reference to the evidentiary record or more than one statement of fact is contained in the same numbered paragraph.

[11]The court recognizes that, in some circumstances, a party opposing a motion for summary judgment may want to set out facts which that party claims are true and supported by evidence, but cannot, in good conscience and consistent with Rule 11, say are undisputed.  In such case, the party should include a separate section of fact statements, set out in short declarative sentences and individually numbered paragraphs, which are supported by some evidence but, nevertheless, are in dispute.  When doing so, however, the party should include record citations which both support and contradict the alleged fact.

*summary judgment purposes unless controverted by the statement of the movant*.

**The court reserves the right *sua sponte* to STRIKE any statements of fact or responsive statements that fail to comply with these requirements.**

### REQUIREMENTS FOR EVIDENTIARY MATERIALS

The parties must electronically file through the court's CM/ECF system, simultaneously with their briefs, all evidentiary materials (*e.g.*, affidavits, exhibits, depositions, or other products of discovery) relied upon in support of or in opposition to summary judgment motions, except those materials included in the moving party's initial evidentiary submission may be referenced by any party opposing the motion, without re-submitting additional copies of the same documents.

While the court reserves the right to consider evidentiary materials that are not specifically referenced in the brief, no party has a right to assume the court will consider such materials. A specific reference must include the exhibit number, page, and when appropriate the line number.

**A.     Organization**

Each volume of evidentiary materials must include a table of contents that includes a brief narrative description of each document included: *e.g.*, "Plaintiff's Exhibit 1, the Deposition of John Jones." For ease of citation, each affidavit, exhibit, deposition, or other product of discovery must be separately identified by a capital letter or numeral (*i.e.*, "Exhibit A" or "Exhibit 1"); and, if the exhibit contains more than one page, each page must be separately numbered.[12] **Counsel are directed to submit entire depositions, even if relying only on excerpts.**

Deposition travel transcripts that are submitted as part of the evidentiary record should include no more than four (4) pages of deposition text per 8½" by 11" page.

---

[12]A reference to that exhibit in the statement of facts or brief might be, "Plaintiff's Ex. 1, p. 41." The court does not, however, require any specific form as long as specific page references are used.

**B.**      **Number of Sets Submitted**

The parties must **electronically file** one set of evidentiary materials through the court's CM/ECF system.  The parties must simultaneously **submit** to the Clerk of Court, for delivery to the court's chambers by the Clerk, an exact copy of the set of evidentiary materials, clearly identified as a "courtesy copy."  There must be *no differences* between the electronically filed materials and the "courtesy copy."

**C.**      **Binding of Courtesy Copy**

The courtesy copy of the evidentiary submission *must be securely bound* — in separately numbered volumes, if necessary — for ease of use and to prevent inadvertent loss of pages.